UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KELLI C. S.[1], <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:18-cv-02237-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Kelli C. S. ("Plaintiff") filed a Complaint on March 19, 2018, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on February 22, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff filed her application for DIB on January 12, 2015, alleging disability commencing on January 9, 2014. AR 46, 152-57. On October 23, 2017, after her application was denied initially and on reconsideration (AR 58, 73), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert. AR 31-45. On November 9, 2017, the ALJ found Plaintiff was not disabled (AR 15-25), but found she had severe impairments of degenerative disc disease of the lumbar spine and obesity. AR 17. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform sedentary work, except she can never climb ladders, ropes, or scaffolds, and she can only occasionally stoop, kneel, crouch, and crawl. AR 19.

The ALJ determined that although Plaintiff was unable to perform her past relevant work as a licensed nurse practitioner (AR 23), considering her age, education, work experience, and RFC, Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: addresser; document preparer, microfilming; and stuffer. AR 24-25. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act ("SSA"), from the alleged onset date through the date of the decision. AR 25. After, Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied (AR 1-6), this action followed.

# II.
# LEGAL STANDARDS

**A. <u>Standard of Review</u>**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if

they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

      Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

      When a claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

      First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe"

medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of

production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present four disputed issues (Jt. Stip. at 3):

Issue No. 1: Whether the ALJ erred by finding Plaintiff's mental impairments were not severe;

Issue No. 2: Whether the ALJ properly evaluated Plaintiff's subjective symptoms and third-party statements[2];

Issue No. 3: Whether the ALJ erred in assessing medical opinion evidence; and

Issue. No. 4: Whether the ALJ erred in finding Plaintiff has the ability to perform jobs existing in significant numbers in the national economy.

### A. Step Two Determination

Plaintiff alleges the ALJ erred by not finding her bipolar and post-traumatic stress disorders to be severe impairments. Jt. Stip. at 3-7.

### 1. Applicable Law

At Step Two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits his ability to do basic work

---

[2] In the statement of disputed issues, this appears as "Issue No. 3" even though it is listed as the second issue and later briefed as "Issue No. 2." See Jt. Stip. at 3, 11, 18. The Court refers to it as "Issue No. 2" to comport with the chronology of the issues in the briefing.

5

activities. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" Id. at 687 (citation omitted). Harmless error analysis applies to the Step Two determination. Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

2. **Analysis**

At Step Two, the ALJ found Plaintiff had two severe physical impairments, degenerative disc disease and obesity, but no severe mental impairments. AR 17-19. Regarding Plaintiff's mental impairments, the ALJ considered her bipolar and post-traumatic stress disorders and provided an analysis with specific consideration of the four functional areas known as the "paragraph B" criteria, but found neither severe. AR 18-19. The ALJ also explained that "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B . . . ." AR 18-19.

Here, although the ALJ did not find Plaintiff's mental impairments to be severe, even assuming the ALJ erred, any error would be harmless for two reasons. First, as noted, the ALJ resolved Step Two in Plaintiff's favor, i.e., the ALJ found Plaintiff's claim survived the "gatekeeping" step designed to

dispose of groundless claims by finding other impairments to be severe. The ALJ did not terminate the sequential evaluation at Step Two; rather, he continued the analysis through the final steps of the disability determination. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the Step Two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at Step Two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error in declining to find impairments severe harmless because Step Two is the "gatekeeping" step, and the ALJ continued the analysis).

Second, the ALJ considered Plaintiff's mental health issues in assessing her RFC. The ALJ stated at Step Four that he considered all symptoms in fashioning the RFC. AR 19. Moreover, in the RFC assessment itself, the ALJ again considered Plaintiff mental limitations from her bipolar and post-traumatic stress disorders and management of her mental impairments. AR 21-23. Accordingly, any error in declining to find a severe mental health impairment was harmless because the ALJ considered Plaintiff's mental health impairments at Step Four. See Hurter v. Astrue, 465 F. App'x 648, 652 (9th Cir. 2012) (error in declining to find depression and anxiety severe harmless because ALJ considered all symptoms in formulating RFC); see also Duncan v. Berryhill, 2017 WL 6059140, at *6 (S.D. Cal. Dec. 7, 2017) (ALJ contrasted the "special technique" analysis with the "more detailed assessment" required for the RFC, indicating the ALJ's later analysis of claimant's mental impairment was designed to address the RFC).

For these reasons, the Court finds any error at Step Two was harmless.[3]

---

[3] As part of this claim, Plaintiff also alleges that the ALJ had a duty to further develop the record regarding Plaintiff's mental impairments, including by calling a

**B.     Third-Party Function Report**

In part of Issue 2, Plaintiff contends the ALJ erred by discounting the third-party function report completed by her ex-husband.[4] Jt. Stip. at 17-18.

1. Applicable Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Friends and family members in a position to observe a symptoms and activities are competent to testify as to a claimant's condition. See Diedrich, 874 F.3d at 640. Such testimony "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting law witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

---

consultative examiner or seeking an opinion from Plaintiff's treating sources or a medical advisor. Jt. Stip. at 6. Considering the Court's disposition of Issue No. 2, Plaintiff may raise this request for further factual development with the ALJ on remand. See Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it.")

[4] Defendant does not acknowledge or otherwise attempt to refute Plaintiff's argument. Jt. Stip. at 18-23; See Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response.").

1. Analysis

Plaintiff's ex-husband completed a Form SSA-3380-BK "Function Report-Adult-Third Party" provided by the Agency. AR 188-96. The report was based on his observations of Plaintiff during their 24 years of marriage, living together, and doing "everything" with her. AR 188. He explained his observations of her limitations, including her inability to lift, bend, and stretch due to constant pain, and the side effects of her "high dose" pain medication. AR 188, 193, 195. He described her activities from the time she wakes up until she goes to bed, the assistance she receives from others, and her difficulties in performing various activities. AR 188-93. He provided information regarding her ability to do certain physical and mental tasks and explained that she is "unable to move physically without pain." AR 193-94.

The ALJ did not summarize or otherwise discuss any of the statements made in the function report, but discounted them because: (1) the statements were not given under oath; (2) the statements "appear[ed] to be no more than parroting of the subjective complaints already testified to by the claimant"; (3) Plaintiff's ex-husband was "not competent to make a diagnosis or argue the severity of [Plaintiff's] symptoms"; and (4) "most importantly," his statements were "not supported by the clinical or diagnostic medical evidence" discussed earlier in the decision. AR 29.

Here, the ALJ improperly discounted the statements. First, there is no requirement that a third-party function report be administered under oath. See Valenzuela v. Berryhill, 2018 WL 1524496, at *13 (S.D. Cal. Mar. 28, 2018) ("an ALJ cannot disregard a lay witness's testimony simply because it was not provided under oath"). Plaintiff's ex-husband completed a form approved and provided by the Agency, and there is no requirement on the form or under the regulations that a third-party attest to his or her observations and abilities of a claimant under oath. See Stewart v. Astrue, 2012 WL 487467, at *6 (C.D. Cal.

9

Feb. 15, 2012) (ALJ improperly discounted statements because they "were not given under oath"; the third party "submitted her observations regarding [claimant]'s activities and abilities on a 'Function Report-Adult-Third Party,' which is the Social Security Administration's own 'Form SSA–3380–BK.'"); §§ 404.1513(a)(4), 416.913(a)(4).

Second, the ALJ's conclusion that Plaintiff's ex-husband's statements "appear[ed]" to parrot Plaintiff's subjective complaints is insufficient. AR 19. The ALJ fails to explain how Plaintiff's ex-husband's account of his observations of the effects of Plaintiff's pain and other symptoms on her functional limitations and activities around the house, as he was well qualified to do, was improper. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Buckard v. Astrue, 2010 WL 5789044, at *17 (D. Or. Dec. 7, 2010) ("Far from 'parroting' [claimant]'s allegations, the [third-party] witnesses described independent observations of [claimant]'s physical condition."). Consistency of testimony is not, in and of itself, a ground to discount testimony. Moreover, the ALJ failed to identify, compare, or otherwise comment on the statements in the function report and how they related to Plaintiff's testimony.[5] See, e.g., Brown-Hunter, 806 F.3d at 494 (ALJ must identify "which testimony she found not credible, and . . . explain[] which evidence contradicted that testimony." (emphasis in original)); Stephens v. Colvin, 2014 WL 6982680, at *7 (N.D. Cal. Dec. 9, 2014) (ALJ improperly disregarded claimant's mother's third-party statements by failing to comment on her testimony); Lewis v. Astrue, 2009 WL 2044661, at *2 (C.D. Cal. July 8, 2009) (finding "not sustainable" ALJ's rejection of third-party function report because it was not

---

[5] The ALJ merely cited the entirely of Plaintiff's function report (AR 179-87), and the third-party function report (AR 188-96), with a "compare" signal. AR 23. The ALJ makes no mention or citation to Plaintiff's hearing testimony.

10

given under oath and appeared to be no more than "a parroting of the subjective complaints already testified to by the [Plaintiff]").

Third, the ALJ's reasoning that Plaintiff's ex-husband was "not competent to make a diagnosis or argue the severity of [Plaintiff's] symptoms" is legally deficient. As mentioned, friends and family members who are in a position to observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. See Diedrich, 874 F.3d at 640; Dodrill, 12 F.3d at 918-19. Indeed, the statements do not contain diagnosis or medical findings because the very purpose of third-party testimony is to obtain the lay witness's subjective impression of claimant's abilities and limitations. Thus, the ALJ improperly discounted the statements for this reason. See Dallas v. Comm'r Soc. Sec. Admin., 2017 WL 4242028, at *5 (D. Ariz. Sept. 25, 2017) (ALJ improperly disregarded function report because third party was not a doctor trained to make observations about claimant's limitations); Augg v. Colvin, 2016 WL 1388054, at *5 (W.D. Wash. Apr. 8, 2016) ("There is no requirement that a lay witness be 'medically trained to make exacting observations.' Nor should there be given that lay witnesses are by definition not medical professionals."); Earhart v. Colvin, 2015 WL 2368597, at *4 (D. Or. May 18, 2015) (noting Commissioner's concession that third-party's lack of medical training was not a valid reason for rejecting testimony).

The fourth and final reason offered by the ALJ is likewise inadequate. A lack of support from the "clinical or diagnostic medical evidence" is not a proper basis for disregarding lay witness' observations. Diedrich, 874 F.3d at 640 (quoting Bruce, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). That lay testimony and third-party function reports may differ from medical records alone "is precisely why such evidence is valuable at a

hearing." Diedrich, 874 F.3d at 640; Smolen, 80 F.3d at 1289 (ALJ erred by rejecting testimony of claimant's family members about claimant's symptoms because medical records did not corroborate those symptoms); Bray v. Berryhill, 2018 WL 3076919, at *9 (C.D. Cal. June 19, 2018) ("[T]o the extent the ALJ determined that the [third-party function r]eport should be discounted based on a lack of support from the medical records, this was not a germane reason to give 'little weight' to [friend's] observations."); Stewart, 2012 WL 487467, at *6 (ALJ's statement that third-party statements were "not supported by the clinical or diagnostic medical evidence," without more, is not a sufficiently specific reason to reject statements).

Accordingly, the ALJ did not rely on specific germane reasons supported by substantial evidence to discount the third-party report. In this instance, the Court cannot conclude that the ALJ's error was harmless. The ALJ's decision lacks any "meaningful explanation" based on specific evidence in the record for rejecting the report. See, e.g., Brown-Hunter, 806 F.3d at 492 (ALJ's failure adequately to specify reasons for discrediting testimony "will usually not be harmless"). Because of the significant functional limitations reflected in the third-party report, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting the statements, could have reached a different disability determination. Stout, 454 F.3d at 1055-56; Stephens, 2014 WL 6982680 at *7 (improper rejection of third-party testimony was not harmless because, if credited, it could support a finding that claimant is disabled).

**C.    Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.

See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes that remand for further proceedings is warranted. Properly credited third-party statements necessarily bolster Plaintiff's subjective complaints, the ALJ's assessment of which is challenged in the other portion of Issue 2. A remand will allow the ALJ to reconsider Plaintiff's credibility in light of the third-party statements.[6] Moreover, because the assessment of both Plaintiff's credibility and the third-party report referenced the medical evidence of record, an evaluation of both in conjunction with that evidence, including the medical opinion raised in Issue 3, is necessary. See e.g., Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because ALJ's evaluations of credibility "are inescapably linked to conclusions regarding the medical evidence"); Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding due to interrelated nature of ALJ's decision to discount credibility and give appropriate consideration to medical opinions). Finally, a proper synthesis of all of the disputed issues – Plaintiff's subjective complaints, the third-party function report, and the medical

---

[6] This is particularly important here given the Commissioner's notation that least one of the reasons for discrediting Plaintiff likely is not sufficiently specific. See Jt. Stip. at 22 n.5.

13

evidence of record – impacts the analysis of what jobs, if any, Plaintiff could perform in the national economy (Issue No. 4).

Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up the remaining issues in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall reassess the third-party function and Plaintiff's subjective complaints in conjunction with the medical evidence, and then reassess Plaintiff's RFC in light of that analysis, and thereafter proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers in the national or regional economy.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: March 25, 2019

_____
JOHN D. EARLY
United States Magistrate Judge